Booth, J.,
delivered the opinion of the court:
This case comes here under a special jurisdictional act, as follows:
“AN ACT For the relief of Snare and. Triest Company.
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the claim of the Snare and Triest Company for reimbursement for loss and damage to barge, tools, and machinery, resulting from a collision with the U. S. S. Colorado on the night of February ninth, nineteen hundred and five, at the League Island Navy Yard, be, and the same is hereby, referred to the Court of Claims, with jurisdiction to hear and determine the same to judgment: Provided, That the petition is filed within six months from the passage of this act.” (84 Stat. L., 2567.)
The language of the jurisdictional act circumscribes the extent of the judgment. The recovery is limited to the loss of the “ barge, tools, and machinery; ” incidental losses, although directly proximate, are excluded. The Congress has frequently granted relief to claimants for injuries sus *112 tained by the negligent conduct of its agents, and almost uniformly limited the extent of recovery as in this case. (St. Louis & Miss. Valley Transportation Co. v. United States, 33 C. Cls., 265, and cases there cited.) The claimant herein was engaged in executing a contract with the defendants. The subject matter of the agreement was the construction of an extension to Piers Nos. 2 and 3 at the League Island Navy Yard near Philadelphia. In the prosecution of the work a derrick barge or lighter was an indispensable adjunct, and on the night of February 9, 1905, was moored to Pier No. 2, then an uncompleted part of the contract work. The U. S. S. Colorado was moored to the same pier on January 10,1905. She had been put into the slip by her builders and was brought to the navy yard pending her final acceptance by the Government. The contractors simply moored the ship temporarily; after she went into commission she was more securely moored by authority of the commandant of the navy yard and subsequently made fast in the usual and customary way by her regular officers. The accident complained of occurred on the night of February 9, 1905. Prior to the event considerable ice had accumulated in the river; ice boats were employed in breaking the same, and the situation as respects its presence was constantly growing more serious. There were no eyewitnesses to the collision, but it is admitted by all the testimony in the record that on the date of its happening the ice situation was unusual, severe, and extremely serious.
The ice coming down the river on the ébb tide accumulated in great volume around the ship, and, as described in Finding IV, disengaged its moorings, broke her chains, and caused her to change her position in such a manner as to strike the smaller vessel of the claimant, which- resulted in her going down. The most significant circumstances attesting the fact of the collision was the presence of paint on the derrick barge at the point of her injury, and the unmistakable absence of similar paint from the stern of the Colorado. The derrick barge never did break her moorings, and when subsequently raised by the claimant showed an injury in but one place, directly opposite the position the Colorado must have occupied at the time of the collision.
*113 The Nellie (139 Fed., 753) is a case strikingly similar to the case at bar. The common-law liability as to negligence is applicable in cases of marine collisions; applying its principles, elementary and quite familiar, brings this case fairly within the rule and establishes liability.
The circumstances surrounding the situation of the Colorado called for a higher degree of care in her moorings than was exercised. The ice floe which brought about her changed position was the sequence of prior conditions manifestly apparent, and a constant menace. It was not sudden and unexpected. The officers in charge of the ship were put upon their guard respecting this danger, and should have forestalled the accident by more than the ordinary precautions usually observed under normal conditions. {The Nellie, supra; The Drumcraig, 183 Fed., 804; The Severn, 113 Fed., 578.)
The cases cited above answer the defendants’ contention of inevitable accident. The facts do not bring this case within the rule.
Judgment is awarded the claimant in the sum of $2,000. It is so ordered.